UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLIN CLARKE, M.D., COLIN CLARKE, M.D., P.C.,<br><br>Plaintiffs,<br><br>-against-<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO CASUALTY COMPANY,<br><br>Defendants, | **MEMORANDUM AND ORDER**<br>Case No. 24-cv-00493-FB-SJB |

*Appearances:*
*For the Plaintiffs:*
WESLEY MEAD
The Mead Law Firm, P.C.
3033 Brighton 3rd Street
Brooklyn, NY 11235

*For the Defendants:*
BARRY I. LEVY
Rivkin Radler LLP
926 RXR Plaza
Uniondale, New York 11556

**BLOCK, Senior District Judge:**

Plaintiffs Colin Clarke, M.D. ("Clarke") and Colin Clarke, M.D., P.C. (collectively, the "Clarke Parties") bring this action against Defendants Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Co., and GEICO Casualty Co. (collectively, "GEICO"). Colin Clarke is a physician who is licensed to practice medicine in New York, and Colin Clarke, M.D., P.C. provides medical care to patients within the state. The Clarke Parties

1

operate multiple medical offices in New York State. The Clarke Parties assert a claim of unlawful interference with protected rights pursuant to New York Civil Rights Law § 70-b ("§ 70-b"). GEICO moves to dismiss the Complaint for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, GEICO's motion is GRANTED.

## Background

On a Rule 12(b)(6) motion, the Court assumes the complaint's factual allegations, but not legal conclusions, to be true. *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013). To survive a motion to dismiss under Rule 12(b)(6), the complaint must include sufficient facts to state a claim to relief that is facially plausible, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), i.e., the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Clarke Parties allege that GEICO has interfered with their protected right to provide or obtain lawful medical care in violation of New York Civil Rights Law § 70-b. There are two bases for this alleged interference. First, GEICO

on June 21, 2023, initiated an earlier lawsuit against the Clarke Parties in this Court alleging fraud and RICO violations. Second, separate from that lawsuit, GEICO previously required the Clarke Parties to submit to examinations under oath ("EUOs") concerning insurance claims by sending requests to the Clarke Parties' practice locations, and requested voluminous information from them prior to paying insurance claims.

Contrary to the Clarke Parties' allegations, these actions are not cognizable as unlawful interference with medical care under § 70-b.

## Discussion

The thrust of GEICO's Rule 12(b)(6) argument is that the statute does not apply to the type of medical care described in the complaint, and that the pleaded facts do not amount to the type of interference with protected rights against which § 70-b aims to provide protection.

*New York Civil Rights Law § 70-b*

In 2022, New York State enacted the Freedom from Interference with Reproductive and Endocrine Health Advocacy and Travel Exercise, or FIRE HATE, Act, which amended the New York Civil Rights Law by adding a new Section 70-b. *See* S. 93039A, 2021–2022 Leg. Sess. (N.Y. 2022). Section 70-b created a claim for unlawful interference with protected rights that arises when a person demonstrates that he or she:

3

> "exercised or attempted to exercise, or facilitated or attempted to facilitate the exercise of a right protected under the constitution of the state of New York and/or protected or permitted by the laws of the state of New York, to obtain or provide the medical care described in subdivision six of this section, and such exercise, provision, facilitation, or attempt thereof results in litigation . . . ."

N.Y.C.R.L. § 70-b(1).

Subdivision six, in turn, provides that the rights protected:

> "shall include lawfully provided medical care including but not limited to reproductive and/or endocrine health care, and all medical, surgical, counseling or referral services relating to the human reproductive system, including but not limited to services relating to pregnancy, contraception, or the termination of a pregnancy."

N.Y.C.R.L. § 70-b(6).

Under subdivision two, claims arise under the statute in the following circumstance:

> "[W]hen any person or entity commence an action in any court, in the United States or any of its territories, in which the allegations against the person, whether civil or criminal, involve accessing, providing, facilitating, or attempting to access, provide, or facilitate the medical care described in [§ 70-b(6)]."

N.Y.C.R.L. § 70-b(2).

To state a claim under § 70-b the Clarke Parties must allege facts sufficient to support a plausible inference that they provided or attempted to provide the type

4

of "lawfully provided medical care" described in § 70-b(6), and that GEICO commenced a court action against them in connection with this care. The Court is aware of no prior decision interpreting § 70-b.

On its face, the statute provides a cause of action for interference with protected rights in circumstances in which a person has attempted to exercise a right protected under the law or constitution of New York to "obtain or provide" the type of medical care described in § 70-b(6), and that exercise or attempt "results in litigation or criminal charges brought against that person in any court in the United States or its territories." Whether any of the facts pleaded by the Clarke Parties state a claim for interference with protected rights, then, turns on the scope of "medical care" encompassed by § 70-b(6).

*The Scope of Medical Care in § 70-b*

In New York, "[a] basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment, and that construction is to be preferred which furthers the object, spirit and purpose of the statute." N.Y. Stat. Law § 96 (McKinney). When evaluating a party's contention that an allegation should be dismissed for failure to state a claim under a particular statute, the district court may consider both the statute's plain meaning and legislative history, and apply canons of statutory construction. *See Katz v. Focus Forward, LLC*, 22

F.4th 368, 372–73 (2d Cir. 2022) (per curiam) (interpreting statutory basis for claim and affirming 12(b)(6) dismissal).

Accordingly, when interpreting a New York statute, a court may need to consider, for instance, the expressed intentions of legislators and an "official statement of intent" accompanying the legislation. *See Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998). Here, the sponsor memo accompanying the New York State Senate bill straightforwardly explains that its "purpose" is "[t]o protect the rights of individuals seeking abortion care or gender affirming care in New York State." *See* Sponsor Memo, Bill No. S9039A, 2021–2022 Leg. Sess. (N.Y. 2022) (available at https://www.nysenate.gov/legislation/bills/2021/S9039).

Additionally, when interpreting New York statutes, a court may consider legislative history "where the plain statutory language is ambiguous or would lead to an absurd result." *Universal Church v. Geltzer*, 463 F.3d 218, 223 (2d Cir. 2006). "Although statutes will ordinarily be accorded their plain meaning, it is well settled that courts should construe them to avoid objectionable, unreasonable or absurd consequences." *Long v. State*, 7 N.Y.3d 269, 273 (2006). The legislative history of the FIRE HATE Act illuminates New York lawmakers' understanding of the types of medical care to be encompassed by the newly created § 70-b(6). At the time of passage, lawmakers' discussion of the legislation clearly demonstrated an

understanding that "medical care" encompassed reproductive services and abortion-related medical care. *See* N.Y.S. Assembly Chambers Transcript (May 31, 2022) (available at https://www2.assembly.state.ny.us/write/upload/transcripts/2021/5-31-22.html#09039) (remarks on S. 90939 / A. 10094 by Assemblymember Burdick). Legislators acknowledged a degree of imprecision in the statute's wording but contemplated only a narrow range of scenarios—wrongful death lawsuits and intrafamily disputes over whether to keep an unconscious family member on life support—in which § 70-b(6) might conceivably encompass medical care other than reproductive services or gender-affirming care. *See id.* (remarks by Assemblymember Goodell).

The Clarke Parties' proposed interpretation of § 70-b as applying to *any* medical care is inconsistent with the "general spirit and purpose underlying its enactment," and, furthermore, would generate unreasonable and absurd consequences. The Clarke Parties emphasize the catchall language in § 70-b(6) which describes the statute's sweep as "including but not limited to" reproductive and/or endocrine health care. The Clarke Parties contend that they have a claim under § 70-b because they have pleaded that they have provided medical care, and § 70-b is "not limited to" reproductive or gender-affirming medical care. Because the § 70-b(6) catchall provision "including but not limited to" should be read to

7

extend the statute's reach to all medical care, the Clarke Parties argue, they have stated a cognizable claim.

This is not a reasonable interpretation of the statute. As GEICO correctly observes, this would subject a person filing an action in connection with *any* provision of medical care to liability under § 70-b. That cannot be. This interpretation would produce exactly the type of "unreasonable or absurd" consequences that are to be avoided. *See Long*, 7 N.Y.3d at 273. On the view propounded by the Clarke Parties, doctors who commit alleged medical malpractice could have a cause of action for unlawful interference against a patient who then brought suit against them.

The conclusion that "medical care" is to be read narrowly is reaffirmed through application of the canon of *ejusdem generis*, which provides that when interpreting a statute, a general or collective catchall term is typically controlled by associated specific items in the list. *See Fischer v. United States*, 144 S. Ct. 2176, 2180 (2024). This method of interpretation "track[s] the common sense intuition that [the legislature] would not ordinarily introduce a general term that renders meaningless the specific text that accompanies it." *Id.*

The defensible, reasonable interpretation of § 70-b is that it provides a cause of action for interference to those who have been targeted by litigation in response to their seeking or providing reproductive or gender-affirming medical care, or

8

possibly in narrow additional circumstances—not to those sued in connection with any provision of medical care whatsoever.[1] Accordingly, the Clarke Parties have not pleaded facts alleging they exercised or attempted to exercise a protected right "to obtain or provide the medical care described in § 70-b(6)."

## Conclusion

For the foregoing reasons, GEICO's motion to dismiss the Clarke Parties' claims is granted.

**SO ORDERED.**

                                                                               /S/ Frederic Block
                                                                               FREDERIC BLOCK
                                                                               Senior United States District Judge

Brooklyn, New York
November 4, 2024

---

[1] This is also consistent with scholarly views of the statute. *See, e.g.*, Leslie Francis & John Francis, *Federalism and the Right to Travel*, 26 J. HEALTH CARE L. & POL'Y 49, 58 (2023) ("New York's 'Fire Hate' act establishes a cause of action for damages for unlawful interference with the right to obtain abortion care protected under New York state law."); Paul Schiff Berman, Roey Goldstein, and Sophie Leff, *Conflicts of Law and the Abortion War Between the States*, 172 U. PENN. L. REV, 399, 493 (describing the statute as "creat[ing] a cause of action under New York law for 'unlawful interference with protected rights,' which allows individuals to bring a claim against someone who has sued them or brought charges against them for abortion-related conduct").